BUD COLEMAN, Father; DORA COLEMAN, Mother; SHIRLEY JEAN ROBIN-
  SON, Guardian Ad Litem for Christopher D. Fuller, Minor Son; COLE-
  BLES COLEMAN, JR. Deceased v. CITY OF WINSTON-SALEM, Self-
  Insured

No. 8110IC922

(Filed 4 May 1982)

1. Master and Servant § 58— workers' compensation—intoxication as proximate
   cause of death—remand for findings
       Where there was ample evidence which would have permitted, but not
   compelled, a finding that an employee's intoxication proximately caused his
   death, the Industrial Commission erred in finding that there was "no evidence
   that the death was caused by intoxication," and the cause must be remanded
   to the Industrial Commission for findings as to whether the employee's death
   was proximately caused by intoxication.

2. Master and Servant § 79.1— presumption that child is wholly dependent—con-
   stitutionality
       The provision of G.S. 97-39 stating that "a child shall be conclusively
   presumed to be wholly dependent for support upon the deceased employee" is
   not unconstitutional.

APPEAL by defendant and plaintiffs Bud Coleman and Dora
Coleman from the North Carolina Industrial Commission opinion
and award of 5 March 1981. Heard in the Court of Appeals 8 April
1982.

Colebles Coleman, Jr., an employee on a sanitation crew, was
killed when a sanitation truck rolled over his body. The Deputy
Commissioner found that intoxication was the proximate cause of
the accident and denied compensation. G.S. 97-12. Upon appeal,
the Full Commission granted compensation.

Colebles Coleman, Jr., died on 2 October 1978 from massive
head and facial injuries received when a sanitation truck rolled
over his body. A medical examiner arrived on the scene shortly
thereafter around 12:50 p.m. He ordered Coleman's body trans-
ferred to Forsyth Memorial Hospital. The following day, a
pathologist performed an autopsy on the body. He obtained a
blood sample from decedent's heart. Toxicology tests revealed the
blood was 230 milligrams percent ethanol. It was the pathologist's
opinion that such an alcohol content would have rendered
Coleman "under the influence" at the time of his death, and was
sufficient to cause impairment of his judgment and coordination.

Dr. McBay, with the office of the Chief Medical Examiner, testified as an expert witness and gave his opinion as to the effect a .23 blood alcohol level would have had on decedent at the time of his death. He testified:

"In my own best judgment and opinion, at .23, Coleman would have been drunk. His face might have been flushed and his pupils dilated. His mood could or would be unstable or exaggerated; he would have loss of restraint; his thinking, or intellect, would be confused or clouded. He might have thickness of speech and may show staggering; he would have incoordination. He would lack judgment. He would have a slowing of response to stimuli or his reaction time would be slowed down. In my opinion, a .23 percent blood alcohol level would have definitely rendered Mr. Coleman intoxicated at the time of his death. I make no distinction between intoxicated and drunk. The difference between the two is hazy. Mr. Coleman was definitely under the influence of alcohol beyond any doubt.

In my opinion, a person with Mr. Coleman's physical characteristics and a .23 blood alcohol level would definitely be heavily impaired with respect to judgment and coordination.

In my opinion, Mr. Coleman would have to have consumed a minimum of 10 ounces (or 10 drinks) of a 100 proof liquor (50% alcohol) within an hour or two of the time he died to reach the concentration of blood alcohol (.23) found in Mr. Coleman's blood. If Mr. Coleman drank over a six hour period, one would have to add at least a drink every other hour if not more to get that concentration. Ten ounces of 100 proof liquor would be the minimum to get that concentration. In my opinion, a person with a .23 percent blood alcohol level could be impaired to the extent that he could or might stagger and fall under the wheels of a slowly backing garbage truck and thereafter be unable to extricate himself from a position of danger. A person with a .23 blood alcohol level might not have perceived the danger or be able to pull his mind to a point that he would decide to get out of danger."

Coleman's fellow employees testified that Coleman was not intoxicated when he arrived at work on 2 October at 6:45 a.m.

During the morning, Coleman worked alone on one side of the street, following the truck. At the time of the accident, co-workers saw the truck backing up and Coleman on the ground, underneath the tire of the truck. There was no testimony as to Coleman's actions immediately preceding the accident.

After hearing evidence, the Deputy Commission made the following pertinent findings of fact:

. . .

"7. Decedent consumed ethyl alcohol after starting the collection route on the morning of 2 October 1978. It was not supplied by defendant employer or a supervisory agent thereof.

8. Decedent's control of his mental and bodily faculties was substantially, appreciably, and perceptibly impaired at the time of the accident causing the injuries that resulted in his death. This impairment was caused by alcohol consumption. He was intoxicated at the time of the accident. The injuries suffered by him were proximately caused by intoxication because the accident was caused by his intoxication."

The Deputy Commissioner denied compensation on the basis that accidental death was caused by decedent's intoxication. G.S. 97-12(1).

Plaintiffs appealed to the Full Commission. After reviewing the record, the Full Commission set aside the opinion and award filed by the Deputy Commissioner. It made the following pertinent findings and conclusions of law:

"1. . . . Decedent was not intoxicated at the beginning of the working day.

. . .

6. A blood sample was taken from decedent's heart during autopsy. . . . The blood sample was noted to be slightly decomposed during chemical analysis. The blood sample taken from the heart of decedent was determined to contain 230 milligrams percent of ethyl alcohol.

7. The decedent was judicially declared to be the father of Christopher Dennard Fuller, now a minor, on 9 September

1966. . . . The deceased's father and mother were partially dependent upon the deceased.

8. Decedent's death was the result of an injury by accident arising out of and in the course of his employment by the defendant-employer.

COMMENT

In the opinion of the undersigned, there is no evidence that the death of the employee was proximately caused by intoxication. *Lassiter v. Town of Chapel Hill,* 15 N.C. App. 98, 189 S.E. 2d 769 (1972).

It is the opinion of the undersigned that the deceased's minor child, being an acknowledged illegitimate under age 18, was legally wholly dependent upon the deceased employee and takes to the exclusion of those parties partially dependent. G.S. 97-39. . . ."

The Full Commission awarded compensation to decedent's minor son.

*R. Lewis Ray and Associates, by R. Lewis Ray, for plaintiff appellants and plaintiff appellees, Bud Coleman and Dora Coleman.*

*Womble, Carlyle, Sandridge and Rice, by Allan R. Gitter and James M. Stanley, Jr., for defendant appellant.*

*Morrow and Reavis, by John F. Morrow, for appellee, Shirley Jean Robinson.*

VAUGHN, Judge.

[1] The primary question for resolution by the Commission was whether the death of the employee was proximately caused by intoxication. The Commission made no findings on that issue. Instead, it found that there was "no *evidence* that the death was caused by intoxication." (Emphasis added.) We conclude there was ample evidence which would have permitted, but not compelled, a finder of the facts to find that the employee's drunkenness proximately caused his death, and we reverse the decision. It was the duty of the Commission to resolve the issues on the evidence before it. It is the responsibility of the Commission, of course, to

weigh the evidence, direct as well as circumstantial, and the reasonable inferences arising therefrom. It cannot, however, ignore any of the evidence. It must consider *all* the evidence, make definitive findings and proper conclusions therefrom and enter an appropriate order. *Harrell v. Stevens & Co.*, 45 N.C. App. 197, 262 S.E. 2d 830 (1980).

The Commission, as well as the employee, appears to rely heavily on the decision of this Court in *Lassiter v. Town of Chapel Hill*, 15 N.C. App. 98, 189 S.E. 2d 769 (1972). In that case, the Commission specifically found "that even though deceased had sufficient alcohol in his blood at the time of his death to be intoxicated, the death of deceased was not occasioned by intoxication." In that case, therefore, the Commission made a finding on the question of proximate cause. It is elementary that findings of the Commission are binding on appeal if supported by competent evidence. Although not set out in the Court's opinion in *Lassiter*, the record on appeal in that case discloses that the Commission found, in substance, that the operator of a garbage truck failed to see that deceased was leaning inside the compactor to empty his collection barrel. The driver's attention was diverted by some children near the truck. He "started operating the compacting devices inside the truck which caught the upper portion of deceased's body and crushed him." All that *Lassiter* stands for, therefore, is that since the Commission obviously concluded that the truck driver's oversight was the proximate cause of the death, it was not error for the Commission to fail to make a specific finding on decedent's intoxication.

[2]  Plaintiffs Bud Coleman and Dora Coleman appeal from that part of the Commission's order awarding plaintiff minor son compensation benefits. G.S. 97-39 states that "a child shall be conclusively presumed to be wholly dependent for support upon the deceased employee." The Colemans contend that Christopher Fuller was only partially dependent upon the deceased employee and that the conclusive presumption of G.S. 97-39 violates the Fourteenth Amendment. Plaintiffs' brief fails to set forth either assignments of error or exceptions as required by Rule 28(b)(3) of the Rules of Appellate Procedure. The appeal is, consequently, subject to dismissal. *State v. Shelton*, 53 N.C. App. 632, 281 S.E. 2d 684 (1981). Nevertheless, it is clear that the argument is without merit for the reasons, among others, set out in *Carpenter*

*v. Tony E. Hawley Contractors,* 53 N.C. App. 715, 281 S.E. 2d 783, *cert. denied,* 304 N.C. 587, --- S.E. 2d --- (1981).

The award is vacated, and the case is remanded for findings based on the present record and proceedings not inconsistent with this opinion.

Vacated and remanded.

Judges MARTIN (Robert M.) and ARNOLD concur.