***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties and their representatives. Accordingly, the Full Commission affirms with modifications the Opinion and Award of Deputy Commissioner Rideout.
 ***********
The Full Commission finds as fact and concludes as matters of law the following stipulations of the parties:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and that the Industrial Commission has jurisdiction of the parties and of the subject matter; *Page 2 
2. All parties are subject to, and bound by, the North Carolina Workers' Compensation Act;
3. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties;
4. That at the time of the injury, the Employer-Defendant, R.B. Pharr Associates, were insured by the Hartford Insurance Company pursuant to the laws of the North Carolina Workers' Compensation Act;
5. The Employer-Employee relationship existed between Plaintiff and Defendant-Employer on or about June 1, 2008, the date reflected on I.C. File Number 008689;
6. On June 1, 2008 the Employer-Defendant employed (3) or more employees;
7. Plaintiff's applicable average weekly wage is stipulated to be $777.84 resulting in a weekly compensation rate of $518.59;
8. Plaintiff sustained an admittedly compensable injury on or about June 1, 2008 when he sustained an occupational disease directly related to and arising out of his employment with Employer-Defendant;
9. Defendants filed a Form 63 with the North Carolina Industrial Commission on August 18, 2008;
10. Defendants have provided both medical and indemnity benefits for Plaintiff's occupational disease;
11. Plaintiff did not return to work for Employer-Defendant following his occupational disease, but has not worked in any employment since November 18, 2008;
12. The parties participated in mediated settlement conference on August 17, 2009, which was unsuccessful. *Page 3 
13. The parties entered in a Pre-Trial Agreement, which was submitted into evidence as part of the record, along with the following stipulated exhibits:
 a. The Pre-Trial Agreement;
 b. Selected portions of Employee-Plaintiff's personnel file as maintained by Defendants;
 c. North Carolina Industrial Commission Forms 18, 19, 22, 25R, 61, 33, and 33R;
 d. Plaintiff's responses to Defendants' First Set of Interrogatories and Request for Production of Documents;
 e. Medical Records from:
 i. Jemsek Specialty Clinic;
 ii. Cox Road Urgent Care;
 iii. CaroMont Family Practice-Greensboro;
 iv. ID Associates;
 v. Gaston Memorial Hospital/CaroMont Health.
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, is 49 years old with a GED. Plaintiff trained with the United States Army as a surveyor, and his prior work history included surveying for several different construction companies. At the time of his alleged injury, Plaintiff was an instrument man and a crew chief for defendant-employer. *Page 4 
2. In May and June 2008, Plaintiff was surveying a site for a future hospital in Charlotte, North Carolina. On this project Plaintiff worked for three weeks in dense vegetations with undergrowth and was bitten by numerous ticks.
3. Plaintiff alleges that in June 2008 he began to experience flu-like symptoms that included some confusion, ringing of the ears, body aches, and chills.
4. On July 25, 2008, Plaintiff was diagnosed with Rocky Mountain Spotted Fever (RMSF), which was accepted by defendants. Plaintiff's blood tests were negative for Lyme Disease. Defendants paid medical expenses and temporary total disability benefits for Plaintiff's accepted occupational disease.
5. Only July 25, 2008, Plaintiff was initially treated by Dr. David York with Cox Road Urgent Care. Dr. York has 25 years of urgent care experience and has significant experience in treating tick-borne diseases. Dr. York's working diagnosis for Plaintiff was probable Lyme disease.
7. On August 9, 2008, Plaintiff returned to Dr. York, and Plaintiff's laboratory tests were positive for RMSF. However, his Lyme disease tests were negative. Plaintiff was to continue his course of Doxycycline, an antibiotic, which had been prescribed at the August 5, 2008 appointment. He also prescribed Rephampin, another antibiotic, and referred the Plaintiff to an infectious disease specialist for a consultation to confirm the results of laboratory tests with an expert.
8. On August 18, 2008, Plaintiff presented to Dr. Harish Marisiddaiah, an infectious disease specialist with I.D. Associates Infusion Solutions by way of referral from Dr. York. Dr. Marisiddaiah determined that Plaintiff no longer had any tick-related illness. He noted that Plaintiff was positive for RMSF and was negative for Lyme titer, CBC, and CMP. He observed *Page 5 
that Plaintiff had treated with Doxycycline from June 1, 2008 to August 18, 2008 and as a result, he had received medication to treat for RMSF or any other tick-borne disease. Dr. Marisiddaiah testified to a reasonable degree of medical certainty that Plaintiff was not suffering from Lyme Disease or RMSF at the time of examination on August 18, 2008.
8. According to the Center for Disease Control (CDC) and the Infectious Disease Society of America (IDSA), there should be a positive test for Lyme Disease where the patient has been exposed for more than a month to the disease.
9. On August 6, 2008, Plaintiff presented to Dr. Manu Patel, a family physician of Caromont Family Physician. Plaintiff told Dr. Patel that he had been treated for RMSF and had begun a course of Doxycycline at an urgent care facility. Plaintiff presented with a rash that was not typical of Lyme Disease as it was not a bull's-eye rash. Dr. Patel ordered a Lyme titer test on the same day and the results were negative. Dr. Patel diagnosed Plaintiff with MRSA, generalized body pain, tobacco use, and questionable Lyme Disease. On September 4, 2008, Dr. Patel opined that Plaintiff's continuing pain was more likely a result of his degenerative disc disease diagnosed in 2007.
10. On August 18, 2008, Plaintiff returned to Dr. York. Dr. York found Plaintiff to be at maximum medical improvement for his work-related RMSF based on Dr. York's assessment and in accordance to a consultation with Dr. Marisiddaiah. Dr. York released Plaintiff to return to work full duty with no restrictions. Dr. York testified to a reasonable degree of medical certainty that Plaintiff never had Lyme disease.
11. On October 16, 2008, Plaintiff presented to Dr. Patel. Dr. Patel noted that Plaintiff's pain perception was far out of proportion to his clinical findings. On November 3, 2008, Dr. Patel diagnosed Plaintiff with bronchitis, anxiety disorder, chronic pain syndrome, and *Page 6 
Lyme Disease. However, Dr. Patel testified that the diagnosis of Lyme Disease was based upon Plaintiff's statement that he had been treated by a Lyme Disease specialist and that the diagnosis was not based upon his independent findings.
12. On October 20, 2008, Plaintiff sought treatment with Dr. Jemsek of Jemsek Specialty Clinic of South Carolina. Dr. Jemsek opined that Plaintiff had Lyme Borreliosis Complex, more commonly known as Lyme Disease. Dr. Jemsek made this determination despite knowledge that the Plaintiff had been diagnosed and treated by three other physicians for RMSF. Dr. Jemsek also did not obtain or review any records from Plaintiff's treating physicians.
13. On December 2, 2008, Plaintiff returned to Dr. Jemsek where it was noted that laboratory tests did not support a diagnosis of Lyme Disease. Plaintiff continued to treat with Dr. Jemsek through September 18, 2009.
14. The Full Commission finds as fact that the opinions of Dr. York, Dr. Patel, and Dr. Marisiddaiah are credible. The Full Commission gives greater weight to the opinions of Dr. York, Dr. Patel, and Dr. Marisiddaiah than to the opinions of Dr. Jemsek.
15. Based upon the greater weight of the credible evidence, the Full Commission finds that Plaintiff did not suffer from Lyme Disease as a result of his employment with defendant.
16. The Full Commission finds that the treatment Plaintiff received by Dr. Jemsek was unauthorized and was not related to his compensable occupational disease.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 7 
1. The Plaintiff contracted RMSF as a compensable occupational disease on June 28, 2008, for which he has received medical treatment and compensation. N.C. Gen. Stat. §§ 97-2, 97-29. However, Plaintiff did not contract Lyme Disease in the course and scope of his employment with defendant and did not suffer from a compensable occupational disease of N.C. Gen. Stat. § 97-53(13).
2. It is the province of the Commission to determine the credibility of witnesses and the weight to be given the evidence.Sidney v. Raleigh Paving Patching,109 N.C. App. 254, 257, 426 S.E.2d 424, 427 (1993). "Thus, the Commission may assign more weight and credibility to certain testimony than other." Dolbow v. Holland Industrial, Inc.,64 N.C. App. 695, 697, 308 S.E.2d 335, 336 (1983), reviewdenied, 310 N.C. 308, 312 S.E.2d 651 (1984). Consequently, the Full Commission gives greater weight to the expert opinions of Drs. Marisiddaiah, York, and Patel.
3. Plaintiff's healing period had ended, and Plaintiff reached maximum medical improvement (MMI) as of August 18, 2008 as to his compensable RMSF. N.C. Gen. Stat. § 97-31.
4. Defendants are not responsible for payment of unauthorized medical care provided by Dr. Jemsek as Plaintiff had reached MMI for his compensable RMSF. N.C. Gen. Stat. § 97-25.
5. Plaintiff is not entitled to further disability benefits. N.C. Gen. Stat. § 97-29.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD *Page 8 
1. Plaintiff's request that defendants reimburse and pay medical treatment with Dr. Jemsek is hereby DENIED. Plaintiff is not entitled to any past or further ongoing medical treatment from Defendants as recommended by Dr. Jemsek.
2. Plaintiff is entitled to a payment $158.42 to provide for the underpayment of benefits from August 1 to 18, 2008.
3. The parties shall bear the costs of this matter individually.
This the 22nd day of September 2010.
 S/___________________
 STACI T. MEYER
 COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1